Thank you, Your Honor. Joe Guerra for the Plaintiff, Pharma. With the Court's permission, I'd like to reserve three minutes for rebuttal. Minnesota makes two remarkable claims in this case. First, that it can compel companies to repeatedly give away private property without paying any compensation for those giving the property away. And second, that federal courts are powerless to do anything to redress or address these clear violations of the Federal Takings Clause. Counsel, is there another statute like this applicable in the country that you're aware of? I am not, Your Honor. I am aware that at least two states seem to be modeling new laws on this one, but I'm not aware of any prior laws of this nature. Your Honor, the District Court accepted the defendant's second theory and dismissed this case on the theory that there was no redressability, but it did so based on a clear misreading of the Supreme Court's decision in NIC. NIC does not categorically foreclose all equitable relief in all takings cases whenever a state provides a just compensation remedy. NIC simply recognized that where those remedies exist, injunctive relief is ordinarily not available because of the general rule that applies in all Federal cases that plaintiffs who have an adequate remedy at law cannot obtain an injunction. What are your best cases that have affirmed injunctive relief? Well, Your Honor, I think one of the problems with the defendant's arguments about show us a case is that we don't have cases involving statutes like this. So the ordinary run-of-the-mind taking case, you can have the landowner can obtain complete relief in a single action, and therefore injunctive relief is foreclosed. But we have a situation in which this law will repeatedly take insulin from the manufacturers indefinitely, and as a consequence, they cannot obtain complete relief in a single action. Therefore, they must bring multiple lawsuits, and that implicates the recognized doctrine that a multiplicity of suits between two parties over the same legal issues is not an adequate remedy. The Supreme Court in NIC didn't have that case, that issue before it, and it certainly didn't repudiate that principle. And that principle applies here precisely because of the necessity of bringing repeated inverse-condemnation actions to redress all the takings that will occur under the statute. So would you consider this a case of first impression, then? I do, actually, Your Honor, with respect to the nature of the relief sought here, with respect to the particular type of injury that we're suffering. That's why the reliance on your prior case law saying that you've never found a statute that the those cases didn't involve a statute like this one that authorized and really compelled repeated takings with an indefinite absence of a termination date. And so because of the necessity of a multiplicity of lawsuits, we don't have an adequate remedy, or the manufacturers don't, and therefore, PhRMA is entitled to injunctive relief. And the defendants offer five arguments for why that's the conclusion. In the multiplicity of lawsuits question, wouldn't you be able to file, say, one inverse-condemnation case every six years? Your Honor, that is what the government suggests we should do, but that's still a multiplicity of lawsuits. So, you know, that doesn't solve the problem. Is that terribly onerous? Is that? Your Honor, that's not the test we submit. The test for the adequacy of a legal remedy is whether its completeness and sufficiency is certain. And here, the fact that we have to bring multiple lawsuits means that we don't we do not have a certain adequate remedy that can provide relief in one action. So you just added the one-action thing. Where does what cases say it has to be one action? It's the principle, Your Honor, of sufficiency and completeness. It's the multiplicity requirement that is itself irreparable harm. Is there a case that says that? That's what the Pomeroy Treatise says in Section 177, where it says the multiplicity of suits itself is the existence of a demonstrates the inadequacy of legal remedies. And what were the facts there? How often was the multiplicity going to have to occur? Your Honor, it's the fact of multiplicity itself. It's not how regis- So just having to file two is going to be fair enough. Exactly right, Your Honor. It's the multiplicity applies, the principle applies. If you have to bring more than one lawsuit to obtain complete and adequate relief. And we have, the manufacturers have to do that here. So the defendants are trying to resist that conclusion based on their five reasons, none of which is successful. They say, first, there's no such thing as a future taking. But injunctive relief is designed to prevent imminent or certain future violations of constitutional rights, and that's precisely what the manufacturers face here under this statute. Now, was that the district court's logic? Was that you're contemplating a future taking and as opposed to something that's present? I think the principle basis for the decision below was the misreading of Nick that I've already described, but I think the district court did adopt the defendant's theory that there's no such thing as a future taking. And the fact, what that principle really is saying is the state doesn't owe money for a taking until the taking occurs. That's not a reason for foreclosing injunctive relief here. That's actually the reason we have a multiplicity of suits problem, because in no single act, the state remedy only provides damages for past actions and it cannot compensate for future actions. Therefore, it's incomplete. And that's exactly the logic of the pre-Civil War cases that we discussed and that are discussed in Nick, where the courts said they were dealing with somebody who had a permanent occupation of their property and there was no ability back then for courts to award permanent damages or damages for the future occupation. So the federal courts or the state courts back then didn't say, well, there's no such thing as a future taking, so just come back when the new period of occupation occurs, all we can do is compensate you for the compensation of the invasion up to this point. Instead, they said, because we can't compensate you for a wrong we know is going to persist into the future, you can get an injunction. And that's precisely the situation that we're in here or the manufacturers are in here. What are you asking us to do? Are you asking us to make a declaration or order the district court or are you asking for a remand simply to correct the district court's legal error that you've described? Your Honor, we are asking you to go further than a mere remand, because we think all of the questions that are raised on this appeal are legal ones that you can resolve and there are really no – and the violation of the constitutional rights of the manufacturers is crystal clear. But a bare minimum, I would say that you should at least address all of the defendant's other arguments for why injunctive relief is not available here, because the district court only addressed one. And these are all basically arguments as a matter of law. So I've already described the no future takings theory. The second one is the courts have upheld continuous takings in the past or allowed continuous takings in the past without authorizing or issuing injunctions. All of those cases involve situations where a statute or regulatory rule interfered with an operation of a business for some period of time, but the interference would eventually end and the plaintiff, the landowner, the business owner in that circumstance, could at some point seek remedy – all the cases involve the Tucker Act – they could go get a complete remedy for all the damages they would have suffered if a taking had occurred in that one action. And that's exactly what we don't have here. Do you want us to just handle an – or impose an injunction on enforcement and send it back for the district court to resolve the constitutionality? Or are you seeking the constitutional issue resolution here? Your Honor, we have asked you to reach the merits ultimately. But for purposes of the declarative – of the injunctive relief we're seeking, you have to assume, since we were dismissed on a motion to dismiss, that we have, in fact, stated a violation of the constitution. So the relief we're seeking is we think this court can ultimately address both the merits and order the district court to enjoin – issue an injunction against the enforcement of this law. But at a bare minimum, you should hold that there is no barrier to injunctive relief, as the district court seemed to believe and as our friends on the other side are advocating. So what would the injunction look like? Would it – it would simply no enforcement of the law? Or would you – would we set up some sort of mechanism where, you know, that they could – that you could seek, I don't know, damages? Or I guess I'm trying to understand, if you want us to order an injunction, what does it look like? I'll leave it at that. Yeah. It's an order to – that the state cannot, and for the defendants, cannot enforce this law absent payment of just compensation for the insulin that they're taking. And that leaves them the – Well, they have to pay for whatever they take. That's what the Constitution requires, Your Honor, yes. And so we're – that's not a – that's not a compulsory – we're not asking for an affirmative injunction that compels them to pay damages to the manufacturers. We're simply seeking prospective relief, both in terms of an injunction and in terms of declaratory relief. If I may address a couple of their other arguments for why there's no availability at all. Your Honor, you have the question? If you don't mind. Are there any cases that invoke the multiplicity of suits principle when the causes of action arise in the future, like here, and couldn't be brought presently? Your Honor, I don't know that – we have not identified that case. But this is a situation in which we've got present violations as well as clear threats of future violations. So it's not, strictly speaking, a problem of future violations. The inability to remedy the violations is a function – and one action is a function of the fact that the law is going to continue into the future. But it is – it is not the only basis for our cause of action here. The defendants also say that we – that we should be denied an injunction here because if one of the manufacturers brought a suit in state court and won, they might stop enforcing the law or the state might stop – might repeal a statute. But that is an insufficient response to our showing of a multiplicity problem. The test for the adequacy of a legal remedy is that its sufficiency and completeness is certain. And the very fact that the defendants here are saying they won't tell you what they're going to do – and they can't, obviously, tell you what the state is going to do – means that we don't have a certainty of a complete relief from one single action. And they then say, well, inconvenience to others is a factor for not granting injunctive relief. But that – the cases they rely on there refer to inconvenience from litigating the matter in a single action, such as confusion of jury or loss of jury rights, confusion of issues. They don't assert anything like that here. They're saying the inconvenience is the third and fourth factors on the data phase and, you know, harm to the state and to the public. But on the assumption that we have established a violation of the – of constitutional rights, those factors fall out of the analysis. So they don't pose any barrier to our right to seek injunctive relief. And finally, they say we didn't plead that – facts demonstrating that the remedy is inadequate. But what that means is that we had – the manufacturer had to actually bring one of these adverse condemnation actions and demonstrate that it was – that it couldn't get complete relief. There's no such pleading requirement identified by them in any case. And that would resurrect the very same exhaustion requirement that the Supreme Court rejected in Nick. I see I've – I'm into my revolved time. I'd like to reserve the balance here, Your Honor. Thank you, Mr. Giroir. Ms. Kranz? Ms. Kranz? Good morning. May it please the Court. Sarah Kranz on behalf of the appellee's Minnesota Board of Pharmacy members. The district court's dismissal should be affirmed because pharma is the wrong plaintiff seeking the wrong type of relief for an alleged taking in the wrong court. We are in the midst of an insulin affordability crisis created by an oligopoly of insulin manufacturers charging exorbitant prices for this life-saving drug. To address this public health nuisance, Minnesota enacted the Alex Smith Insulin Affordability Act, which provides safety nets for Minnesotans who need insulin to survive but cannot afford it because of its exorbitant costs. Well, counsel, the state could have addressed the problem by paying for the insulin itself, correct? I mean, there's a crisis out there, but potentially the state could have appropriated funds rather than, you know, forcing the pharmaceutical industry to support the program. That can be said about any taking, Your Honor. And here, this is not a taking. The Act requires manufacturers... What is it if it's not a taking? Excuse me, Your Honor? What is it if it's not a taking? It's not a taking. It requires manufacturers to reduce the nuisance that they caused, and it was also agreed to by the manufacturers in exchange for... I thought you had abandoned the nuisance argument on appeal. Maybe I missed that. No, Your Honor. The arguments were not abandoned on appeal. It's for the district court to make in the first decision, in the first instance. The point is that the companies that produce insulin have created a nuisance by overcharging for it? That is correct, Your Honor. And they've also... Is there any case out there that's anywhere close to that theory? Yes, Your Honor. Connelly, Ruckelhaus, Concrete Pipe, Apfel, Sierra Medical Services, Franklin Memorial Hospital were all cited in the brief and argued below. But here, the merits is not before this court. The court correctly found that pharma lacks standing. And the relief that pharma requests is discretionary. This court cannot take that discretion. What was the district court's rationale for lack of standing? Which element of the standing requirements did the court rely on? It was relying on, Nick, that equitable relief is foreclosed. It was relying on redressability, Your Honor. Nick doesn't foreclose an injunction, does he? He doesn't foreclose an injunction in all circumstances. An injunction would definitely be appropriate if the taking was alleged to be for a private purpose, if it was alleged that there was no compensation remedies available whatsoever, or if it was invalid because it wasn't authorized by law. Here, the law authorizes and requires manufacturers to provide insulin. Doesn't that include the adequate remedy at law language, though? When the chief wrote that, I thought it, in other words, there's no equitable relief available if there's an adequate remedy at law. That is correct, Your Honor. And as I understand it, your friend is suggesting these multiple state court actions are the basic common law equity principles. That is what he's relying on, Your Honor. And the courts, there's no case that have ever relied on these same principles for determining states' procedures inadequate. Your friend has suggested that this is an unprecedented statute. Would you agree with that? No, Your Honor. This statute is not unprecedented. The only thing unprecedented about it, perhaps, is that it applies to the insulin manufacturers. But Maine's free care laws that are discussed in Franklin Memorial Hospital and California's ambulance laws that are discussed in the Sierra Medical Services, those required hospitals and ambulance companies to repeatedly provide medical services, supplies, and medications for free. And both were upheld against takings challenges. Here, the district court's decision does not keep the manufacturers from having their day in court. It allows the manufacturers, who are the parties whose property was allegedly taken, to sue and seek compensation rather to invalidate this life-saving law. Now, if it were a city or a county that had enacted the act, compensation could be sought in the federal court under NIC. But here, because of sovereign immunity, the manufacturers are required to seek compensation in state court. But this court has determined that bringing a takings claim against a state law in state court is not an injustice. And just last week in Women's Whole Health, they stated that those seeking to challenge the constitutionality of state laws are not always able to pick and choose the timing and preferred forum for their arguments. This court has never recognized an unqualified right to pre-enforcement review of constitutional claims in federal court. Here, the multiplicity of suits argument does not apply to takings, and no court has ever applied that to takings. Cases that PhRMA relies on, Eastern Enterprises, DeLarza, only apply to these dollar-for-dollar exchanges and specifically did not apply to statutes that burden real or physical property because those are compensable. Also, in Cedar Point Nursery, that was decided the day that appellees filed their brief. And in the UPV Babbitt case, there was no discussion of whether injunctive relief was an appropriate remedy for a taking. In Cedar Point Nursery, California never argued jurisdiction, or the equitable relief was foreclosed. The only question there presented to the Supreme Court was whether the law affected a per se taking. And this court isn't bound by previous exercises of jurisdiction when the court's power to act was not questioned. And Cedar Point Nursery actually recognized exceptions to per se takings, such as nuisance and ceding property rights as a condition of licensure, both of which apply here and were argued below. But even if you could apply the multiplicity of suits doctrine to takings, they fail here for several reasons. First, the manufacturers have yet to bring a single inverse condemnation question. Can I ask a question? You seem to be abandoning the standing question and arguing the merits. No, Your Honor. The multiplicity of suits goes to the standing question. Well, as I understand it, the district court said that there was no redressability here. So if we were to order an injunction, you, meaning the State, wouldn't be able to enforce this law, right? That is what they're asking for, Your Honor. Well, if we issued such an injunction, why isn't that redressable? Why wouldn't that redress the alleged injury? They're saying here because compensation is not available. It is foreclosed. So that is not an option for the court. Compensation is not available? No, an injunction isn't available because compensation is. Well, you conceded that NICS doesn't foreclose an injunction, right? Not in all circumstances, but it does here. And that's because insulin is compensable. Minnesota has adequate just compensation procedures. And this Court has found on multiple cases. And you think that's a standing question rather than a merits question? That is how the Court phrased it. You could also phrase it as failure to state a claim upon which relief can be granted. That's the way I would look at it. Which was more of how the State argued it below. But the Court took it as redressability. But multiplicity of suits fails because the manufacturers have yet to bring a single inverse combination action. And under the doctrine that pharma relies on, Pomeroy I guess the question is, is it complete relief to require them to file a suit every six years? Well, and again, that's hypothetical, which is another reason that the multiplicity of suits fails. The possibility or fear of successive suits is not enough. And here it's just a hypothetical fear. Once they bring one action and the legal issue is determined, further actions may not be necessary. And why is that? Because it's unreasonable to presume that the Board could or would continue to enforce the Act as if it is determined in an inverse combination to be a taking. If it tried to, the manufacturers could use it as a defense, just like the raisin growers did in Horn. And the treatises that pharma relies on all state that the legal issue must be determined in plaintiff's favor in at least one successful triadal law before the Court of Equity will interfere. And again, that's because it could end the possibility of successive suits. Also, preventing a multiplicity of suits alone is insufficient to invoke that type of equitable relief. The Court must weigh the equities. And in the case of Armour, this Court laid out five equities that must be considered before giving equitable relief on a multiplicity of suits doctrine, none of which apply here, or none of which they alleged in their complaint to apply here. Also, the doctrine only applies when there is a multiplicity of suits from one wrongful action. Here, pharma alleges separate takings of different pieces of property, several different actions. That's not appropriate under the multiplicity of suits theory. Pharma also claims that even if injunctive relief is foreclosed, they should be entitled to declaratory judgment. But Nick and his predecessors say equitable relief for compensable takings, including declaratory judgments, is barred. In the Duke Power case, which did indicate that declaratory judgments act could be used for a takings claim, it limited its use to potentially uncompensable damages. Only where potentially uncompensable damages are sustained. Here, there are no potentially uncompensable damages. An inverse combination suit in state court, the manufacturers would be paid for all the insulin. They would be paid interest from the date of taking at 4% or higher. They'd be paid for their attorney's costs and their fees. What they're claiming is fully compensable. Also, the declaratory judgment requested would be the functionally equivalent of an injunction. Of course, it sounds to me like you're going to argue in these inverse condemnation cases that it's not a taking. That's correct, Your Honor. Tell me again why this isn't a taking. Because it's to reduce the nuisance they caused and was agreed to them. That's the purpose. In exchange for. That might be the purpose, but why aren't, why isn't the state here taking property that belongs to the pharmaceutical manufacturers? Various courts have upheld similar programs to the takings challenges, Your Honor, in the cases I mentioned. Okay, well tell me on what basis. Why is it not a taking? Abating a nuisance is not considered a taking. That's a purpose. So abating a nuisance in all circumstances is not. It's not in all circumstances, Your Honor. You have to look at all the very specific facts of every case. And if you read the takings cases, they always dig deeper. Here, Pharma is saying, nope, this is a taking. Don't look any further. But here, the takings clause preserves the government power to regulate, subject to only the dictates of fairness and justice. Why isn't this like the raisin case, where you basically are requiring, in that case, farmers to give a certain percentage of what they produce to the government? In that case, they maybe get some money for it, they maybe don't. Here, it's the same or similar. And that was a clear taking. Well, Your Honor, under Horn, it left open the question of whether a mandate to relinquish property as a condition to engage in commerce would affect a per se taking in other circumstances. And there, they didn't abrogate Ruckelhaus. Distinguish this case, then, from Horn. It may have left the door open in a different case, but why is this case different? Because here, you're talking about a highly regulated industry where the Act is trying to reduce the burdens on the public that is caused by the manufacturers. But again, going to Judge Garnett's point, isn't that the purpose, the intent of the legislature? I'm not sure that affects the taking. Your Honor, if you review carefully Connolly, Ruckelhaus, Concrete Pike, and Sierra, they all would indicate that this is, in fact, not a taking. Takings all revolve around whether, well, the purpose, right? The purpose of the Takings Clause is that it was designed to bar government from forcing some people alone to bear public burdens, which in all fairness and justice should be borne by the public as a whole. Here, the public as a whole should not bear the burdens that the manufacturers has caused. But that is not an issue this Court should reach because the District Court did not reach this issue. And also, the claims for equitable relief that they're requesting are reviewed for an abuse of discretion. This Court cannot tell if the... If it was based on legal error below, don't we review the legal error, Dana Noble, or do you disagree with that? It's more than the legal error, Your Honor, because of the equitable relief that's requested. What was argued in the District Court is you don't even need to get to the constitutional questions because they have not met the data phase factor regardless. They have not shown irreparable injury and that the public interest weighs in their favor. They just can't meet those criteria on the facts that are in this record. So dismissal of summary judgment would be appropriate without even getting to the constitutional issues.  Mr. Gura. Counsel, would you address the cases that your colleague suggests would hold that this is not a taking? Yes, Your Honor. Every one of those cases is analyzed as a regulatory challenge or a due process challenge. What's going on here, they didn't involve physical takings. What we have here is the manufacturers are deprived of the right to use, possess, and dispose of their property. That's a per se physical taking. Compensation is not provided prior to the deprivation. That makes it an unconstitutional taking. What's the case that provides the ambulance and medical care? Do you remember that one off the top of your head? They are all regulatory takings challenges, Your Honor. They are restrictions on the use of the facilities and the services, restrictions on the ambulance in the one case. Those are not physical taking cases, and the Supreme Court has made clear that the analysis in regulatory takings does not apply to physical takings and vice versa. And that's why this is an unprecedented law, contrary to what counsel just told you. So taking the services of an ambulance is not? It's a restriction on the use of the property. They didn't take the ambulance. They didn't take the ambulance. Exactly right, Judge Schnitzer. I just want to get to declaratory relief because I didn't get to talk about it. There is absolutely no requirement to show irreparable harm, a multiplicity of suits, or as counsel just said, that the damages would be uncompensable. The plain language of the statute says declaratory relief is available whether or not other relief is or could be sought. So that makes clear that the availability of a state damages remedy is irrelevant to the availability of declaratory relief. And she says that our claims, our theory of a multiplicity of suits is purely hypothetical. They're the ones relying on hypothetical possibilities. The statute as written mandates that the manufacturers keep giving away this property, and it's undisputed that they cannot get full relief in a single action in the state inverse condemnation procedure. Those are not hypothetical facts, and those facts mandate multiple suits. They're saying it's hypothetical that they will stop enforcing the law if a manufacturer brings an inverse action and succeeds on it. But they have the ability to tell you point blank. They could have made a binding commitment in a district court. They could have made a binding commitment in front of you, saying we will, in fact, do that. But they've never done that. They're being very cagey, and they're suggesting, and this is really, I think, my final point. This turns the whole ex parte Young doctrine on its head, and that's why we're not seeking an extraordinary pre-enforcement challenge. As in the Dobbs case, we're bringing a straightforward ex parte Young case seeking prospective, injunctive, and declaratory relief to stop the enforcement of non-constitutional state law. And they're telling you, we're not going to tell you what we do, what we will do definitively, if the manufacturer wins the first inverse condemnation action. But nevertheless, the possibility that we might stop enforcing means that these plaintiffs, this plaintiff has no right to seek injunctive relief in Federal court under ex parte Young. That is clearly not what the doctrine stands for, Your Honor. And I see I'm out of time. Thank you for consideration. Roberts. Roberts.